CHARLES D. CASTLE AND AARON ERICKSON, RESPONDENTS, *v.* CHARLES S. BEARDSLEY, APPELLANT.

*Statute of frauds — promise to answer for the debt of another — consideration must appear in note or memorandum.*

Where a promise is made to answer for the debt, default or miscarriage of another person, the consideration thereof must appear either expressly or by necessary implication, in the note or memorandum in writing required by the statute.

Chapter 464 of 1863, by repealing so much of the Revised Statutes as required a "note or memorandum *expressing the consideration*" to render such a promise valid, restored the law on this subject to the state in which it was prior to the adoption of the Revised Statutes.

*Speyers* v. *Lambert* (1 Sweeny, 335) not followed.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*William C. Cox*, for the appellant. The agreement, on which plaintiffs declare, is void for want of consideration.. (Browne on Statute of Frauds, 403, §§ 387 to 408, inclusive; *Wright* v. *Wees*, 25 N. Y., 151; *Kenworth* v. *Schofield*, 2 Barn. & Cress., 945; *Mallory* v. *Gillett*, 21 N. Y., 412; *Sears* v. *Brink*, 3 Johns., 215; *Baily* v. *Ogden*, id., 411; *Thompson* v. *Blanchard*, 3 Comst., 335; Bingham on Real Property, 341 to 368; *Staats* v. *Howlett*, 4 Denio, 559; *Leonard* v. *Vredenburgh*, 3 Johns., 29; *Rogers* v. *Kneeland*, 10 Wend. 219; *Douglas* v. *Howland*, 24 id., 35; *Eno* v. *Woodworth*, 4 N. Y., 249; *Abeel* v. *Radcliff*, 13 Johns., 297; *Jackson* v. *Sill*, 11 id., 201; 1 Philips' Ev., 547; *Webb* v. *Rice*, 6 Hill, 219; *Stevens* v. *Cooper*, 1 Johns. Ch., 429; Smith on Contracts [67], 81, and cases cited; Smith's Mercantile Law, 577; *Peltier* v. *Collins*, 3 Wend., 452.) The amendment to Revised Statutes striking out the words "expressing the consideration" has not materially affected the requirement of the statute; it does not say that no consideration is necessary to an agreement; it merely leaves the law as it was before 1831. (*Church* v. *Brown*, 21 N. Y., 315 to 331; Bingham on Real Property, 363.)

*Harris & Cooke*, for the respondents. :

TALCOTT, J.:

This is an appeal from a judgment in favor of the plaintiffs, rendered at the Monroe Circuit, on a trial by the court without a jury. The plaintiffs, as partners, under the copartnership style of "The Rochester Native Wine Company," were the holders of two promissory notes for $100 each, made by Charles S. Beardsley and one Owens, as partners, under the style of "Beardsley & Company," payable to the order of, and indorsed by, H. W. Beardsley. The notes matured in June and July, 1873. Payment thereof was duly demanded at maturity. They were not paid, and the indorser was duly notified of the demand and the non-payment. Said notes remaining unpaid on the 9th day of November, 1874, the defendant, Charles S. Beardsley, on that day signed and delivered to the plaintiff an instrument in writing, as follows, viz.:

"I agree to give my individual note, payable to Rochester Native Wine Co. (less the amount of liquor barrels sent this month at $1.75), payable on the first of July next, as collateral to two notes given them by Beardsley & Co., being $100 each, and indorsed by Henry W. Beardsley. October 9, 1874.

"(Signed)     C. S. BEARDSLEY."

The defendant makes two objections to the recovery. First, that the consideration upon which the defendant entered into the collateral agreement is not set forth with sufficient particularity in the complaint. Second, that as the agreement or promise does not purport to be founded upon any consideration it is void within the statute of frauds.

As to the first objection it appears that the complaint avers the collateral agreement to have been executed for value. This averment we deem sufficient — at all events until the plaintiff shall have been ordered to make his complaint more specific. The second objection presents a more serious question.

The statute of frauds, as enacted in the Revised Statutes of 1830, declares every agreement void, unless some note or memorandum *expressing the consideration* be in writing, subscribed by the party to be charged therewith in certain specified cases, among others: "Every special promise to answer for the debt, default or miscarriage of another person." This provision, though not in the

precise verbiage, was in substance the provision of the Revised Laws of 1813, and of the statute of frauds from the time of Charles II, except that by the revision of 1830, the words "*expressing the consideration*" were inserted. Under the statute, as it existed before the revision of 1830, it had been long held that the "agreement" required by the statute, to be in writing, comprehended the consideration as well as the promise, and that the omission could not be supplied by parol proof of a valid consideration not specified or in some manner indicated by the agreement in writing. (See *Staats* v. *Howlett*, 4 Denio, 560.) But it was, nevertheless, held that the consideration might be inferred, implied or "spelled out" from the agreement and from other papers referred to in it, and need not be expressly stated as the consideration upon which the agreement was based. In *Packer* v. *Willson* (15 Wend., 343), Chief Justice SAVAGE delivering the opinion of the court, and speaking of the words added to the statute in the revision of 1830, says: "It was thought by the revisers and the legislature that the most proper way for courts to find out the consideration of an agreement was not to infer or imply or spell out the consideration, but after the passing the Revised Statutes the party should express the consideration," and in that case it was substantially held that the difference made by the addition of the words in question was between the words "express" and "imply," which, in the case then before the court, was said to be "a very material one." From that time down to the passage of the amendatory act of 1863, hereafter referred to, the question whether the addition of the words in question in the revision of 1830 had added any thing to the statute, or had restricted the power and ingenuity of the courts in implying or endeavoring to "spell out" a consideration from the agreement, was a fruitful source of controversy in the courts, leading to contradictory rulings on the subject. (See *Church* v. *Brown*, 21 N. Y., 315.)

In 1863 the legislature amended this portion of the statute of frauds by re-enacting its provisions, omitting the words "expressing the consideration." (Laws of 1863, ch. 464.)

This amendment, it would appear, left the law to stand precisely as it was, under the interpretation of the courts, before the words requiring the consideration to be expressed were inserted, and thus the law would be relieved from that uncertainty which seemed to

arise out of differences of opinion in regard to the effect of the words which had been inserted in the revision of 1830, and which, for upwards of thirty years, had been the subject of controversy.

The counsel for the plaintiffs, however, contends that by the amendment, the sole apparent effect of which was to omit from the statute the words which required the consideration to be expressed in the agreement, the legislature did not intend to restore the act, as it was understood and construed by the courts before those words were inserted, but intended to make a more sweeping alteration of the law, and, in fact, to overturn or abrogate that doctrine which had for a long time been maintained by the courts, both in England and in this State, that the whole agreement, including not only the promise but the consideration, must in some way appear or be indicated by the writing. And a very elaborate opinion of the Superior Court of New York, delivered by Judge FREEMAN, in *Speyers* v. *Lambert* (1 Sweeney, 335; S. C., 37 How., 315), is cited as sustaining this position.

It is quite true that the decision in *Speyers* v. *Lambert* fully sustains the position of the counsel for the plaintiff, and Judge FREEMAN, in the opinion, very strongly argues that by the amendment of 1863, the legislature intended to abolish the necessity of the consideration being in any way stated or indicated by the written agreement. But it will be seen that the argument of the opinion is as to what the law perhaps ought to be, rather than an attempt to show, by any known or recognized rule of interpretation, that the amendment of 1863 was intended by the legislature to have the effect assumed.

We must assume, what we cannot doubt was especially true in this case, that the legislature was familiar with the construction which had been adopted by the courts prior to the revision of 1830, and to the controversies which had grown up after that time, and been continued for a period of thirty years, as to whether the words added in 1830 had really added any thing to the meaning of the statute, or whether the courts were still at liberty to infer and " spell out " the consideration as before the revision of 1830.

The only inference as to the intention of the legislature in the amendment of 1863, which can be safely drawn from the act then passed is, we think, that the legislature intended to restore the

law to what it was well settled to be, before the omitted words which had given rise to controversy and uncertainty had been inserted. This is plainly what the legislature did, and to hold that it intended to simply restore the law to what it was before the omitted words were inserted, but to go further and abrogate the necessity of having that part of the agreement relating to the consideration in writing like the residue, we think is unwarranted by any sound and safe rule in the interpretation of statutes, and would approach the assumption of legislative power by the court. Mr. Bingham, in his work on executory sales of real property, in alluding to the case of *Speyers* v. *Lambert*, says: "It is certainly a singular way of construing a statute that has once been amended, and then again amended, by striking out the amendment, to mean something different from what it did before it was amended at all." (Bingham on Contracts for Sale of Real Property, 363.) There appears to be great force in the criticism. Though entertaining the highest respect for the court by which the decision thus criticised was made, we are constrained to a different conclusion. In the case at bar, the notes referred to in the agreement had been made and become due, long before the agreement in question was made, and they could not of themselves furnish any consideration for the agreement of the defendant, and indeed his agreement contains nothing by reference or otherwise from which any consideration can be "inferred, implied, or spelled out." It is a mere naked promise to answer for the debt of another, and manifestly void by the statute of frauds, if that statute requires, as we hold it does, that the consideration as well as the promise should appear by agreement in writing.

The judgment is reversed and a new trial ordered, costs to abide the event.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment reversed and new trial ordered, costs to abide the event.